UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Jay Shenk et al.,

                Plaintiffs,

                                            **Hon. Hugh B. Scott**

                                            05CV173
        v.                                      (Consent)

                                            **Decision**
                                               **&**
                                            **Order**

Cattaraugus County et al.,

                Defendants.

Before the Court is Defendants' motion for summary judgment (Docket No. 20).[1]

## BACKGROUND

On March 15, 2005, Plaintiffs Jay Shenk and Melissa Shenk commenced this action, pursuant to 42 U.S.C. § 1983, alleging that Plaintiff Jay Shenk's ("Shenk") constitutional rights were violated while he was a pre-trial detainee temporarily held in a lock-up cell without his medications, and suffered an anxiety attack. (Docket No. 1.) Defendants to this action include Cattaraugus County; Ernest Dustman, in his official capacity as Cattaraugus County Sheriff; Jamie Babb, Deputy Gonska, John Doe # 1 and John Doe # 2, in their individual and official

---

[1] The parties have consented to proceed before the undersigned as Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Docket No. 11).

1

capacity as Cattaraugus County Sheriff's Department employees.

More specifically, Shenk claims that the defendants violated his Fourth, Fifth, Eighth and Fourteenth Amendments by taking away his medications before placing Shenk in a holding cell and failing to make the medications available to Shenk when he indicated to the Sheriff's Deputies that he needed them.  It appears undisputed that on or about December 15, 2003, after appearing in a child support proceeding held in the Cattaraugus County Courthouse in Olean, New York, Shenk was taken into custody by the Cattaraugus County Sheriff's Department and placed in a holding cell located in the Courthouse, awaiting transportation to the Cattaraugus County Jail in Little Valley, New York.  (Compl. ¶¶ 16, 18.)  Shenk claims he informed the defendants that he had a medical condition and carried some medications which needed to be made available to him.  (Compl. ¶ 17.)  Shenk asserts that defendants Gonska and John Doe # 1 removed the medications from Shenk before placing him in the holding cell.  (Compl. ¶ 18.)  About 20 minutes later, Shenk was removed from the cell, given back his medications and taken to a police cruiser which, due to Shenk's large size, was determined to be unsuitable to transport him.[2]  (Compl. ¶ 21; Shenk 50-H Depo.[3] p. 28.)  While alternate transportation was being arranged, Shenk was returned to the holding cell and his medications were removed again. (Compl. ¶ 22; Shenk 50-H Depo. p. 28.)  Shenk alleges that, at this time, he began to experience physical pain, suffering, anxiety, increased heart palpitations, pain in his arms and hands, and emotional distress.  (Compl. ¶ 26.)  He asserts that he requested to get his medications back from

---

[2]   Shenk described himself as being 6'5" tall and weighing 350 pounds.  (Shenk 50-H Depo. p. 33.)

[3]   Attached as Exhibit 1 to Docket No. 20.

the defendants several times over a period of 15-30 minutes, fearing that his physical symptoms could cause fatal effects, but was denied access to them. (Compl. ¶¶ 27, 28; Shenk 50-H Depo. pp. 30-32.) Subsequently, in an effort to get further attention from the defendants, Shenk thrust his fist and forearm through a wire-reinforced glass window in the cell door, lacerating his right hand, wrist and arm. (Compl. ¶ 31; Shenk 50-H Depo. p. 34; Shenk Depo.[4] pp. 74-74.) Shenk alleges that his injury is a result of the defendants' deliberate indifference to his repeated requests for his medications and to his apparent physical and emotional distress. (Compl. ¶ 28.) Plaintiff Melissa Shenk claims that, as a consequence of this injury, she has been deprived of her husband's services, companionship and support. (Compl. ¶ 45.)

      The defendants seek summary judgment, asserting that the defendants were not deliberately indifferent to Shenk's medical needs and were appropriately following corrections policies which require that all medications be removed from an individual to prevent an intentional or accidental overdose or misuse of the medications. (Docket No. 20, Defs.'Memo. at 5) Further, the defendants argue that the county policy followed by the individual defendants – *viz.*, removal of all personal effects of a detainee, including all medications, before placing the individual in a cell – was in conformance with state mandates. Id. Lastly, the defendants contend that the failure to give Shenk his medication was not a proximate cause of Shenk's injury, which was rather a result of Shenk's own actions in punching the glass. Id.

---

[4]    Attached as Exhibit 2 to Docket No. 20.

## DISCUSSION

**Standard of Review**

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. See Trans Port, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (citing Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The Court must draw all reasonable inferences in favor of the non-moving party and grant summary judgment only if no reasonable trier of fact could find in favor of the non-moving party. See Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991); Howley v. Town of Stratford, 217 F.3d 141 (2nd Cir. 2000). However, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit Information, Co., 970 F.2d 1110, 1112 (2d Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2d Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The non-moving party must come forward with enough evidence to support a jury verdict . . . and the . . . motion will not be defeated merely . . . on the basis of conjecture or surmise." Trans Sport, 964 F.2d at 188 (citing Bryant v. Maffucci, 923 F.2d at 982). If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are properly controverted by the non-moving party." Glazer v. Formica Corp., 964 F.2d

149, 154 (2d Cir. 1992) (citing Dusanenko v. Maloney, 726 F.2d 82 (2d Cir. 1984). The Court's responsibility in addressing a summary judgment motion is identifying factual issues, not resolving them. See Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2d Cir. 1990). However, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2d Cir. 2000) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Deliberate Indifference Claim Against the Defendants
in Their Individual Capacities.**

The Eight Amendment right to be free from cruel and unusual punishments generally applies in the context of a convicted prisoner. Where, as here, the plaintiff was a pre-trial detainee, and not a person who had been convicted, his rights are protected by the Due Process Clause of the Fourteenth Amendment. Weyant v. Okst, 101 F.3d 854, 856 (2d Cir. 1996) (with respect to receiving medical treatment, "an unconvicted detainee's rights are at least as great as those of a convicted prisoner"). However, the courts in the Second Circuit are split on the constitutional basis for analyzing a claim for deprivation of medical treatment to an arrestee by the law enforcement agency. See Quint v. Donaj, 2006 U.S. Dist. LEXIS 37698, at *16-17 (D.Conn. Jan. 20, 2006) (noting the split); Freece v. Young, 756 F.Supp. 699, 701 (W.D.N.Y.1991) (Fisher, Mag. J.). Some courts have applied the Due Process Clause of the Fourteenth Amendment, a standard similar to the Eighth Amendment deliberate indifference standard. See Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000) (citing Weyant, 101 F.3d at

856); Mowry v. Noone, 2004 U.S. Dist. LEXIS 28225, at *12-13 (W.D.N.Y. Sept. 30, 2004) (Feldman, Mag. J.) Other courts apply the Fourth Amendment testing the objective reasonableness of plaintiff's treatment within the totality of the arrest and seizure. See; Freece, 756 F.Supp. 699; Quint, 2006 U.S. Dist. LEXIS 37698, at * 18.  The plaintiff's claim fails under either analysis.

The Eighth Amendment outlaws "cruel and unusual punishments."  U.S. Const. Amend. VIII.  "This includes punishments that 'involve the unnecessary and wanton infliction of pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)); see also Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).  While "society does not expect that prisoners will have unqualified access to health care," Hudson v. McMillan, 503 U.S. 1, 9 (1992), an inmate can nevertheless prevail on an Eighth Amendment claim arising out of medical care by showing that a prison official acted with "deliberate indifference" to the inmate's serious medical needs.  Hathaway v. Coughlin, ("Hathaway I"), 37 F.3d 63, 66 (2d Cir. 1994) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

The deliberate indifferent standard incorporates both objective and subjective elements. The objective "medical need" element measures the severity of the alleged deprivation, while the subjective "deliberate indifference" element ensures that the defendant prison official acted with a sufficiently culpable state of mind.  Smith v. Carpenter, 316 F.3d 178, 183-184 (2d Cir. 2003). To prevail on a constitutional claim of deliberate medical indifference, a plaintiff must prove that he suffered from an objectively serious medical condition, which the defendants knew of and deliberately disregarded.  Green v. Senkowski, 100 Fed.Appx. 45, 46 (2d Cir. 2004) (citing Chance, 143 F.3d at 702 (collecting cases)).  A serious medical condition is one that may result

in death, degeneration, or "chronic and substantial pain." Id.; see Hathaway I, 37 F.3d at 66. This standard contemplates a "condition of urgency, one that may produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). A serious medical need arises where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Chance, 143 F.3d at 702. To satisfy the subjective prong of the test, prison officials must have acted with a sufficiently culpable state of mind, i.e., deliberate indifference. Plaintiff must therefore show that prison officials intentionally denied, delayed access to, or intentionally interfered with prescribed treatment. See Estelle, 429 U.S. at 104-05; see also Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). "[T]he subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (quoting Farmer, 511 U.S. at 835). Accordingly, subjective recklessness can satisfy the deliberate indifference standard where "the official has actual knowledge that a prisoner faced a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. Finally, it is well settled that a plaintiff asserting an Eighth Amendment claim based upon inadequate medical care must establish deliberate indifference for each individual defendant against whom the claim is asserted. Brock v. Wright, 315 F.3d 158,

164 (2d Cir. 2003) (stating that plaintiff must show deliberate indifference on the part of a "particular defendant").

In the instant motion, the defendants argue that the plaintiff's medications were taken away from him pursuant to a policy that all personal property, including medications, is to be removed from an individual before he or she is placed in a holding cell.[5] Also, the defendants note that Shenk asked for his medications because he felt nervous and agitated, and not because he had an actual heart attack or stroke (Docket No. 20, Defs.' Memo. at 5.)  In opposition, Shenk asserts that the anxiety and other symptoms he experienced while in the holding cell made him believe that he was about to suffer from a heart attack and that the deputies' refusal to provide his medications, i.e. Xanax for anxiety and nitroglycerin for a heart problem, led him to fear that he was risking imminent death.  (Shenk 50-H Depo. pp. 15, 29-30; Docket No. 25, Pls.' Opp'n Memo. at 6.)  Assuming that Shenk's anxiety attack alone constituted a "serious medical condition" for purposes of a deliberate indifference claim, Shenk would still have to prove that the Defendants had actual knowledge that he was in extreme pain or "faced a substantial risk of serious harm," and deliberately disregarded that fact. Farmer, 511 U.S. at 847.  The record in this case does not reflect that the Defendants knew that Shenk was either in great pain or faced a substantial risk of serious harm.  While Shenk was capable of communicating to the Defendants several times that he wanted his Xanax and his nitroglycerin, he never mentioned on those

---

[5]  Attempting to establish a municipal claim, the plaintiffs appear to acknowledge such a policy (Docket No. 25 at page 7) but argues that the individual Cattaruagus County Sheriff's department personnel involved "made no mention of any State mandates or law that required detainees in their custody to have all prescription medication removed from their person. They only referenced informal procedures that were passed down to them from senior officers during their training regarding this specific situation." (Docket No. 25 at page 7-8).

occasions that he was in extreme pain or that he thought he was having a heart attack. (Docket No. 20, Exhibit 1 pp. 29-30; Exhibit 2. pp. 70-72.) Moreover, it would have been difficult for the Defendants to infer from Shenk's behavior that he was in severe pain. In fact, while in the cell Shenk was standing and even tried to block the door open with his foot when one of the deputies came to remove another individual that was detained in the same cell. (Docket No. 20, Exhibit 1 pp. 31-32.) Further, Shenk had been held without his medications only for a short period of time before the accident occurred. The defendants could not have foreseen that he would punch his fist and arm through the door's reinforced glass window.

      The record reflects that the Defendants refused to give Shenk his medications pursuant to a policy whose rationale is to protect the health and safety of detainees rather than denying medical assistance. This uncontroverted policy is consistent with the New York State Commission of Correction minimum standards and regulations regarding the provision of medical care to detainees. (Sheriff Dennis B. John Aff. at 2; Superintendent Mary Burger Aff. at 2.) The rationale for not allowing detainees to hold on to their medications include preventing detainees from tampering with medication or introducing contraband in the jail, and preventing overdosing or improper sharing of medication among detainees. Id. The Defendants in this case were also instructed that if a detainee had a medical emergency, the proper procedure was to call 911 and summon help from medical professionals. (Sheriff Dennis B. John Aff. at 3; Superintendent Mary Burger Aff. at 3; Babb Depo. pp. 60-61.)

      Shenk has not demonstrated that the defendants' refusal to provide him his medication constituted deliberate indifference to a serious medical need. Specifically, Shenk has failed to come forward with any evidence from which a trier of fact could conclude that the individual

9

defendants had actual knowledge that Shenk faced a substantial risk of serious harm and failed to take action to address the matter. Moreover, the record reflects that after Shenk injured himself, the defendants promptly called for an ambulance which arrived at the site 10-15 minutes later and transported Shenk to the hospital where he received proper care. (Shenk 50-H Depo. pp. 75-76.) The defendants actions were, as a matter of law, reasonable upon review of the totality of the circumstances.

Since the plaintiffs have failed to establish a triable issue of fact as to the reasonableness of the defendants' conduct or as to whether the defendants were deliberate indifference to a medical need, summary judgment is granted with respect to these claims.

**Claims Against the County, the Sheriff, and the Deputies
in Their Official Capacity.**

Section 1983 provides in part that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

It is well established that municipalities and other local government bodies are "persons" within the meaning of 42 U.S.C. § 1983. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689 (1978). However, a local government may not be held liable under § 1983 unless the alleged constitutional violation was performed pursuant to a municipal policy or custom. Id. at 694;

Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992) (municipalities are not subject to § 1983 liability solely on the basis of a *respondeat superior* theory); Davis v. City of New York, 228 F.Supp.2d 327, 336 (S.D.N.Y. 2002) (municipalities such as the City of New York may only be held liable when the city itself deprives an individual of a constitutional right). To prevail against a municipality, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. Zara v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citations and quotations omitted). A municipality's official policies and customs include those that are "made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 695. To the extent that a plaintiff sues a municipal official in his official capacity, the plaintiff's claim is treated as a claim against the municipal entity itself. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell, 436 U.S. at 690, n. 55 (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent")); Gottlieb v. County of Orange, 84 F.3d 511 (2d Cir. 1996).

  In the instant case, Defendants readily admit that the Deputies were acting in accordance with the Sheriff's Department policies and regulations when they took Shenk's medications away from him after he was remanded into their custody and failed to return the medications to him upon his request. (Gonska Depo. pp. 31-32; Babb Depo. pp. 30-32.) The record reflects that both Deputy Gonska and Deputy Babb were trained not to place someone in the holding cell with their medications and that they were acting pursuant to directives from their sergeant. (Gonska Depo. pp. 38-39; Babb Depo. pp. 31-32.)

  Under Zara, Defendants Cattaraugus County, the Sheriff, and the Deputies in their official

capacities may be liable in a § 1983 action only if Shenk was subjected to a denial of a constitutional right. Zara, 48 F.3d at 685. Inasmuch as Shenk has failed to prove that the individual Defendants were deliberately indifferent to his medical needs, the claims against the County and the remaining Defendants in their official capacities must also be dismissed.

**Derivative Claim**

Inasmuch as the underlying claims have been dismissed, the derivative claim asserted by Melissa Shenk must also be dismissed. A loss of consortium claim is a derivative claim that is not cognizable under Section 1983. Stallworth v. City of Cleveland, 893 F.2d 830, 838 (6th Cir.1990) (holding that Section 1983 does not reach a state law loss of consortium claim, as the claim does not involve "an injury based on a deprivation of the [plaintiff's] rights, privileges, and immunities."); Wahhab v. City of New York, 386 F.Supp.2d 277, 292 (2005) (" § 1983 does not support derivative claims for loss of consortium."); Juncewicz v. Patton, 2002 U.S. Dist. LEXIS 22651, at *9 (W.D.N.Y. Oct. 8, 2002); Pritzker v. City of Hudson, 26 F.Supp.2d 433, 445 (N.D.N.Y.1998) ("Loss of consortium is not an independent cause of action, but is derivative.... Second, section 1983 does not support a derivative claim for loss of consortium."); Bright v. City of New York, 1985 U.S. Dist. LEXIS 21042, at *3 (S.D.N.Y. April 4, 1985) ("loss of consortium is a state law tort claim that is not cognizable under section 1983"); Kirton v. Hassel, 1998 U.S. Dist. LEXIS 6535, at *28 (E.D.N.Y. March 25, 1998) (citing Stanley v. City of New York, 587 F.Supp. 393, 396 (E.D.N.Y.1984) ("Loss of consortium, however, is a state law claim which does not rise to the level of a constitutional violation.")). Accordingly, Melissa Shenk's claim for loss of consortium is a derivative claim that is not cognizable under Section 1983, and such claim

is dismissed.

## Conclusion

Based on the above, the motion for summary judgment (Docket No. 20) is granted and the complaint is dismissed in its entirety.

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
September 25, 2007